**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS AND PARTICIPATING FOOD INDUSTRY EMPLOYERS TRI-STATE HEALTH AND WELFARE FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SUPER FRESH FOOD MARKETS INC., et al., <br><br> Defendants. | Civil No. 04-1226(RMB) <br><br> **OPINION** |

This matter comes before the Court upon a motion by the Defendants, Super Fresh Food Markets, Inc. ("Super Fresh"), and the Great Atlantic and Pacific Tea Company, Inc. ("A&P") (collectively the "Defendants"), for an award of attorney's fees and costs from the Plaintiffs, United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Health and Welfare Fund (the "Plaintiff Fund"), Clay Bowman and John Calleri (collectively the "Plaintiffs"). For the reasons set forth below, Defendants' motion is denied, in part, and granted, in part.

1

I.  **Background**[1]

In the Amended Complaint, Plaintiffs alleged that the Defendants failed to pay the Plaintiff Fund the full amount for retiree medical coverage in violation of section 515 of The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145.  Defendants contended, in part, that the Plaintiffs' efforts to collect the full amount violated the terms of the collective bargaining agreements.  Plaintiffs also alleged that the Defendants were jointly and severally liable to pay all retiree contributions due to the Fund because Super Fresh and A&P constituted a single employer.

On June 28, 2007, the Court ruled that there were relevant disputed issues of fact that precluded it from granting summary judgment.  The Court found that it was presented with four disputed issues: 1) whether A&P or Super Fresh was obligated to contribute for their retirees' benefits; 2) whether the cost of A&P's retirees could be allocated to Super Fresh because both entities were, in fact, one employer; 3) whether A&P was obligated to contribute for its own retirees despite having no active employees; and 4) whether the agreement regarding the return of Super Fresh's employees (including retirees), who were

---

[1] The facts of this case are set forth at length in the Court's Opinion dated August 19, 2008 [Dkt. No. 169].  Only the facts and procedural history relevant to the instant motion are highlighted here.

2

members of United Food and Commercial Workers ("UFCW") Union Local 27 ("Local 27"), from the UFCW Local 56 Fund to the Plaintiff's Fund included Local 27 members who had been former A&P employees.

This Court held a 21-day bench trial on two of the above issues. For ease of administration, the Court divided the trial so that the issues could be presented in a logical fashion. The Court held it would first address the legality of the Trustees' change in methodology, discussed below. If it found that the change was lawful, it would then address the reasonableness of the change and the entity status of Super Fresh and A&P. The Court addressed the fourth issue, the Local 27 claim, discussed below, in the initial stage as well.

The primary issue before the Court involved the interpretation of the relevant collective bargaining agreements and other related Plan documents, i.e., did they contain a method for employer contributions for their retirees to the Fund, and did the Trustees of the Fund have the authority to change the contribution methodology on May 6, 2003, (hereinafter referred to as the "Change in Methodology Claim"). The other issue involved Plaintiffs' allegation that the Defendants breached the Participation Agreement dated October 13, 2005. Plaintiffs alleged that the Defendants had agreed to pay for former A&P retirees who were re-transferred to the Fund from the Local 56

3

Fund. Defendants countered that the explicit language of the Participation Agreement soundly defeated such claim (hereinafter referred to as the "Breach of the Participation Agreement Claim").

## II. **Discussion**

A prevailing party in an action under ERISA (here, the Defendants) may seek an award of attorney's fees and costs of action. 29 U.S.C. § 1322(g)(1). As the district exercises its discretion in reviewing a request for a fee award, the Court must consider:

1. the culpability or bad faith of the offending party;

2. the ability of the offending party to satisfy an award of attorney's fees;

3. the deterrent effect of an award of attorney's fees against the offending party;

4. the benefit conferred on members of the plan as a whole; and

5. the relative merits of the parties' position.

Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983). No single factor is decisive. Rather, the Court must examine all of the factors and make its decision based on the weight of each. The Court must also articulate its analysis and conclusions as to each Ursic factor. McPherson v. Employees' Pension Plan of American Re-Insurance Company, Inc., 33F.3d 253, 254 (3d Cir. 1994), citing Anthuis v. Colt Industries Operating Corp., 971

4

F.2d 999, 1012 (3d Cir. 1992).

**A.   Plaintiffs' Change in Methodology Claim**

The Court turns first to the primary issue litigated before it, the Change in Methodology Claim.

1.   Culpability or Bad Faith

The first Ursic factor favors an award to the prevailing party in cases involving bad faith and culpable conduct. Bad faith normally connotes an ulterior motive or sinister purpose. McPherson, 33 F.3d at 256. Culpable conduct "is commonly understood to mean conduct that is 'blameable; censurable; [and] normally involves something more than simple negligence.'" Id. at 256-57. A party is not culpable, however, merely because it has taken a position that did not prevail in litigation.

Defendants argue that the Plaintiffs 1) pursued a meritless position; 2) adopted an "indefensible" interpretation of the collective bargaining agreements; and 3) disregarded contrary legal authority. [Defendants' Mem., at 6]. Defendants press two primary arguments: first, that Plaintiffs unfairly argued at the inception of the case that the collective bargaining agreements were ambiguous, and then at the time of trial argued they were not ambiguous; and second, that Plaintiffs should have conceded much earlier in the case that the Fund historically pooled its retirees costs among its employers.

Plaintiffs have not acted in bad faith or culpably. The

5

record demonstrates that the Trustees believed they had the authority to alter the methodology.  The Trustees believed, in good faith, that because the collective bargaining agreements each contained an obligation to fund retiree benefits and a full maintenance of benefits provision, the Trustees had the authority to require the Defendants to pay for their own retirees' benefits.  Although Plaintiffs had previously argued that the collective bargaining agreements were ambiguous, they presented a somewhat refined position at trial, justifying the Trustees' conduct by casting the collective bargaining agreement as open-ended, rather than ambiguous.  [Trial Transcript, at 4799:7-25]. The Court does not view these two positions as inconsistent, and certainly does not believe that this modification in Plaintiff's position represents bad faith or culpable conduct.  Accordingly, although the Court found the Trustees' position to be without merit, it cannot find bad faith or culpable conduct.  Given this finding, the Court holds that this factor does not weigh in favor of an award.

    2.   <u>Ability to Pay</u>

Defendants contend that the Plaintiff Fund is a multi-employer welfare fund with the ability to collect contributions from its many employers to cover its expenses.  Indeed, the Court heard testimony throughout the trial that the Fund has the power to raise funds to cover its expenses, or, it could reduce its

6

internal costs.

Plaintiffs counter that the Fund "has no mechanism to recoup expenses." [Plaintiffs' Mem., at 13]. Yet, Plaintiffs have not provided any explanation as to why such costs could not be paid on a forward-going basis over time. Certainly, as the trial testimony demonstrated, the Trustees could factor into any upcoming maintenance of benefits rates (in compliance with any applicable caps) the expense of an award of fees and costs. Thus, this factor weighs in favor of an award.

    3.    <u>Deterrent Effect Against Defendant</u>

This Court must also determine whether "it would serve the objectives of ERISA to award counsel fees in an effort to deter conduct of the kind in which [Plaintiff] engaged," <u>McPherson</u>, 33 F.3d at 258, even when that behavior falls short of bad faith conduct. <u>Id.</u> This is a case where the Plaintiffs have pressed (and continue to press on appeal) a position that they believe to be legally sound. Although this Court has rejected their position, the Court cannot find that this type of behavior should be deterred. This factor weighs against making an award.

    4.    <u>Benefit Conferred on Plan Members as a Whole</u>

The fourth factor requires consideration of the benefit, if any, that is conferred on others by the Court's judgment. Defendants argue that a judgment will benefit future participants of plans because of the "deterrent effect." [Defendants' Mem. at

7

12]. This argument is more properly directed at the third Ursic argument. Because there has been no showing that a judgment would benefit Plan members, this factor weighs against making an award.

    5.   The Relative Merits of the Parties' Position

The final factor, the relative merits, does not automatically result in favor of the losing party just because its positions have not been sustained. In other words, the fact that the Court rejected the Plaintiffs' legal position does not itself put the fifth Ursic factor in the award column. Here, the Court does not find, based upon the lengthy pre-trial proceedings, as well as the lengthy bench trial, that the relative merits of the position of the parties weighs in favor of an award.

    6.   Conclusion

Accordingly, because Defendants have failed to meet four of the five Ursic factors, Defendants' motion for attorney's fees and costs related to the litigation of the Change in Methodology Claim is denied.

    **B.   Plaintiffs' Breach of the Participation Agreement Claim**

The Court next addresses the Breach of Participation Agreement Claim. A more detailed description of this claim is necessary. In October 2004, negotiations commenced for a successor contract between Local 27 and Super Fresh. These

negotiations, which were occurring during the pendency of this lawsuit, ultimately resulted in a new "Memorandum of Agreement" or "MOA" signed by Super Fresh and Local 27 on July 27, 2005. The MOA memorialized changes or amendments to the existing Super Fresh and Local 27 collective bargaining agreement.  Terms of the prior agreement, not specifically changed by the MOA, were carried forward. The preamble stating that Super Fresh and A&P were separate entities was carried over in the MOA, and A&P was not a party to the MOA.  Although signed on July 27, 2005, by its terms the MOA was retroactive to October 31, 2004 and continued in effect through October 25, 2008.

After the MOA was signed, Super Fresh agreed to pay pursuant to the new methodology for *its* Super Fresh retirees.  The Fund Trustees, however, in accepting the return of the Local 27 employees back to the Plaintiffs' Fund, required more than the MOA itself; they required a document to clarify which participants in the Local 56 Fund would be transferred back and to ensure that anyone who was coming back to the Fund would have their benefits funded by Super Fresh.  At the request of the Trustees, the agreement to transfer was memorialized in a Participation Agreement.

There were several drafts of the Participation Agreement that went back and forth between Local 27 representatives and Super Fresh.  One draft of the proposed agreement, sent by the

9

Trustees, specifically referenced A&P.  This draft was not executed.  Super Fresh returned a draft to the Trustees explicitly excluding A&P.  Ultimately, during an October 27, 2005 meeting the Trustees considered a Participation Agreement with respect to the transfer of the Local 27 participants back to the Plaintiff Fund.  At this meeting, the Board of Trustees adopted the Participation Agreement.  The executed Participation Agreement provided, <u>inter</u> <u>alia</u>:

> WHEREAS, Super Fresh Food Markets, Inc. (the "Employer") has agreed to participate in the United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Health and Welfare Fund in order to obtain Health and Welfare benefits for employees represented by the Union and employer by the employer
> \*     \*     \*
> The Employer also agrees, effective October 1, 2005, to abide by the Resolution adopted by the Trustees of the Fund on May 6, 2003 requiring the Employer to contribute a specific contribution rate for each of the Employer's retirees as such resolution would apply to participants who are present or former members of Local 27 and:  (1) are presently receiving benefits under the UFCW Local 56 Health and Welfare Fund or (2) retire on or after October 1, 2005.
> \*     \*     \*
> [N]othing in this Participation Agreement shall be construed or interpreted as having any effect on, as being inconsistent with, or as in any way prejudicing the claims or defenses of any Defendant or the Fund in the litigation captioned <u>United Food and Commercial Workers Union and Participating Food Industry and Employers Tri-State Health and Welfare Fund et al v. Super Fresh Food Markets, Inc. et al</u>, DNJ Civil Action No. 04-01226 (FLW) (the "Retiree Collection Action").

Notwithstanding the Participation Agreement's clear

10

language, Plaintiffs continued to allege that the Defendants were in violation of the Participation Agreement because they failed to make contributions for the A&P retirees who were transferred back from the Local 56 Fund to the Plaintiff Fund.  Defendants denied the allegation, arguing that the Participation Agreement explicitly obligated Super Fresh to abide by the new methodology and pay separate retiree contributions for Local 27 retirees whose last employer was Super Fresh, but did not obligate Super Fresh to make contributions for Local 27 members whose last employer was A&P.

Against this background, the Court addresses the five Ursic factors in connection with Plaintiffs' prosecution of their Breach of the Participation Agreement Claim.

1.   Culpability or Bad Faith

Plaintiffs' allegation that Super Fresh was in breach of the Participation Agreement for failure to pay for the returning A&P retirees was unreasonable.  The language of the Participation Agreement was clear and unambiguous.  Super Fresh was required to make contributions to the Fund for its own retirees.  Super Fresh was defined as the Employer and the Agreement was signed by Super Fresh only.

Even if the language was ambiguous, which it was not, the evidence was clear that A&P and Super Fresh were asserting that they were separate entities and Super Fresh did not agree to make

11

payments for A&P retirees.  Indeed, the very language in the Participation Agreement preserved this issue.  Indeed, the series of drafts leading up to the executed Participation Agreement confirm that the parties agreed only to transfer the Super Fresh retirees.  In the face of this evidence, which was known to Plaintiffs all along, Plaintiffs pursued a position not supported by the record.  Such conduct was culpable.  Accordingly, this factor weighs in favor of an award.

  2. <u>Ability to Pay</u>

The same reasoning set forth above applies here and weighs in favor of an award.

  3. <u>Deterrent Effect Against Plaintiffs</u>

The ERISA objectives are furthered "if fee awards are employed to deter behavior that falls short of bad faith conduct."  <u>McPherson</u>, 33 F.3d at 258.  This Court finds that Plaintiffs' conduct in litigating the Breach of the Participation Agreement Claim disregarded the factual record, not to mention the plain meaning of the Participation Agreement negotiated among the parties during the pendency of this case.  Plaintiffs' conduct in continuing to pursue this claim, in the face of the record, is indefensible.  This is the type of conduct that courts should seek to deter.  This Court therefore finds that this factor weighs in favor of the Defendants.

  4. <u>Benefit Conferred on Plan Members as a Whole</u>

Under this factor, the Court is to consider the benefit, if any, that is conferred on others in the Fund by the Court's judgment. Because Defendants have not made a sufficient showing other than the deterrent effect of a judgment, a factor already considered by the Court, this factor weighs in favor of the Plaintiffs. Although clearly a judgment that has the effect of deterring frivolous litigation can benefit a plan or fund, this is more properly addressed in the third <u>Ursic</u> factor.

    5.   <u>Merits of the Parties' Positions</u>

As this Court has already stated, Plaintiffs' position in pursuing the Breach of the Participation Agreement Claim was without merit. The legal position the Plaintiffs took before this Court disregarded the plain meaning of the Agreement (as was negotiated by the parties) as well as the factual record. Therefore, this Court finds this factor weighs in favor of the Defendants.

    6.   <u>Conclusion</u>

Having found four of the <u>Ursic</u> factors to weigh in favor of an award, this Court holds that Defendants shall be entitled to an award of attorney's fees and costs incurred with respect to the litigation of the Breach of the Participation Agreement Claim.

**III. <u>Fee Award</u>**

Because the parties have submitted a request for a fee award

13

for the entire matter, Defendants are directed to supply the Court with a breakdown of its fees and costs related to the prosecution of the Participation Agreement claim only. Defendants shall do so within 30 days of the entry of this Order. Plaintiffs shall file a response within three weeks upon entry of the Defendants' submission.  Defendants may thereafter reply within two weeks.

**IV.  Conclusion**

    For the above reasons, the Defendants' motion is granted, in part, and denied, in part.  An accompanying Order shall issue this date.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
United States District Judge

Dated: March 6, 2009