**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS AND PARTICIPATING FOOD INDUSTRY EMPLOYERS TRI-STATE HEALTH AND WELFARE FUND, et al., | Civil No. 04-1226(RMB) |
| Plaintiffs, | **MEMORANDUM** |
| v. | |
| SUPER FRESH FOOD MARKETS INC., et al., | |
| Defendants. | |

Appearances:

Mark E. Belland, Esquire
Steven J. Bushinsky, Esquire
Jeffrey Robert Caccese, Esquire
O'Brien, Belland & Bushinsky, LLC
1526 Haddonfield-Berlin Road
Cherry Hill, New Jersey 08003
    Attorneys for Plaintiffs

Don Anthony Innamorato, Esquire
Jami Segota, Esquire
Reed Smith, LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540-7839
    Attorneys for Defendants

**BUMB,** United States District Judge

On March 6, 2009, this Court held that the Defendants were

entitled to an award of attorney's fees and costs incurred with

1

respect to the litigation of the Breach of the Participation

Agreement.   The Court directed the Defendants to supply a

breakdown of its fees and costs associated with the prosecution

of the Participation Agreement.

Pursuant to the Court's direction, Defendants seek an award

of $311,336.35.[1]   Plaintiffs object to the award on several

grounds: 1) that the total numbert of hours is unreasonable due

to overstaffing as well as excessive and redundant billing; 2)

that the invoices are so heavily redacted that it is impossible

to decipher the number of hours spent on the Participation

Agreement claim; 3) that the Defendants failed to produce

evidence of the prevailing market rate; and 4) that the total

expenses are excessive.   The Court addresses each of these

objections in turn below.

**A.    Hours**

Defendants attempted to calculate the hours they devoted to

the defense of the Plaintiffs' Breach of the Participation

Agreement claim.[2]   In doing so, Defendants established separate

---

[1]   The Court wishes to acknowledge the helpful and thorough
breakdown prepared by Defendants' counsel.

[2]   It is noteworthy that the Defendants excluded fees for
several attorneys and paralegals who participated in the
litigation.   Defendants limited their request for fees to the
work performed by Don A. Innamorato, Esq., Jami Segota, Esq.,
Meghan Offer, Esq., and Hollis Hurd, Esq.   See Certification of
Don A. Innamorato, Esq., at ¶ 1.   Defendants further reduced
their requested award to reflect a 20% discount counsel (except
Hurd) had afforded them in all invoices during the period May 1,

calculation methods for each step of the litigation broken down into the following phases: (1) pretrial discovery preparation; (2) summary judgment; (3) trial time and (4) post-trial submissions.  The Court finds that the approach the Defendants undertook to arrive at a means of quantifying their fees and costs incurred in their defense against Plaintiffs' Participation Agreement claim to be reasonable.

First, with respect to their pre-trial discovery and preparation fees, Defendants reasonably allocated 13% of their total time to the Participation Agreement claim, for a total of $134,222.11.  With respect to their fees incurred in connection with their summary judgment motion, Defendants arrived at a reasonable allocation by an examination of all the legal issues presented and apportioning 13.5% of the total to the Participation Agreement claim, for a total of $22,391.03.  As for the trial fees, Defendants allocated 35% of the total trial fees to the Participation Agreement claim.  The Court finds that this allocation fairly represents the percentage of time spent at trial relating to the Participation Agreement claim.  This results in an amount of $76,855.46.  Finally, Defendants allocated $19,975.00 to post-trial submissions.  The Court finds that the manner in which Defendants arrived at this conclusion (set forth in their papers) to be reasonable.

----

2008, through July 31, 2008.  Id. at ¶ 2.

Plaintiffs argue that because it is impossible to determine the amount of time the Defendants actually expended on the Participation Agreement claim during pretrial discovery, Defendants are not entitled to any such fees.  The Court disagrees.  The billing time entries demonstrate the hours spent answering interrogatories, preparing for depositions (of individuals who were competent to testify about the Participation Agreement), and various conferences relating to the production of discovery.  It is not unreasonable that the Defendants did not contemporaneously breakdown the time spent on a deposition or preparing for a deposition for each issue discussed.

Second, Plaintiffs argue that Defendants' own methodology relating to the fees charged for the summary judgment motion was flawed.  According to Plaintiffs, the amount should be $6,816.83. Plaintiffs propose that the Defendants should only be awarded fees related to the amount of pages addressed to the Participation Agreement claim, as Defendants had proposed with respect to their post-trial fees.  Yet, the Court finds that awarding fees on this "per page basis" gives short shrift to the amount of time and effort defense counsel put into addressing the claim in its summary judgment motion.  Substantial time was required to prepare the motion papers, yet this would not be adequately reflected in a "per page basis" calculation.  See Garden State Auto Parts Pontiac GMC Truck, Inc. V. Electronic

<u>Data Systems Corp.</u>, 31 F.Supp. 2d 378, 382 (D.N.J. 1998)("the amount of attorney's fees awarded by the Court must be reasonable under the circumstances of the case.")

Plaintiff also quarrels with Defendants' allocation of 35% to the time devoted at trial. Plaintiffs' argument is flawed, however, because they construe the Breach of the Participation Claim too narrowly. This claim was not limited to the four corners of the Participation Agreement, but to the events and transactions leading up to and flowing from the Agreement as detailed at trial and in this Court's Opinion and Order at pages 8 through 11. As set forth in the Court's Opinion, this claim included arguments that the Defendants agreed on numerous occasions to transfer and pay for the Local 27 A & P retirees as well as extrinsic evidence of the parties' bargaining history.

Finally, Plaintiffs contend that the total hours are extensive because the case was overstaffed, specifically, the continuous use of four lawyers - - Don A. Innamorato, Esq., Jamie Segota, Esq., Meghan Offer, Esq., and Hollis Hurd, Esq. To illustrate their point, Plaintiffs point to the bills which reveal that almost 35 hours (Innamorato 9.0; Offer 10.0, Segota 9.20, and Hurd 6.50) were billed for one trial day. See Plaintiffs' Br., at 7-8 [Docket No. 203].

In complex cases, such as this one, it is not unreasonable to have more than one attorney. Indeed, Plaintiffs were

represented by several attorneys, two of whom appeared daily at

trial (Brett Last, Esq. and Mark Belland, Esq.)  See, e.g.,

Docket Entry No. 104. (Brett Last, Esq., Mark Belland, Esq., and

Steven Bushinsky, Esq.)  This case warrants a finding of non-

excessiveness for the time spent by four attorneys.  Clearly,

this was a highly-detailed, multi-defendant ERISA action

involving substantial discovery, motions, testimony and exhibits.

The transactions at issue spanned decades.  Moreover, with

respect to Mr. Innamorato, Ms. Segota and Ms. Offer the Court

observed first-hand at trial the amount of work that these

attorneys put into the case.  Mr. Innamorato and Ms. Segota, much

like both counsel for Plaintiffs, shared the tasks of examining

the witnesses and introducing testimony.  Ms. Offer valuably

contributed to the presentation of evidence, coordination of

exhibits and the like.  As such, the Court will allow an award

based upon the hours expended by these attorneys. It is not

apparent to the Court, however, that Mr. Hurd's attendance at

trial was essential to the presentation of the case.  Indeed, the

Court cannot recollect one instance where Mr. Hurd participated

in the trial.  Accordingly, the Court will not award the trial

time of Mr. Hurd (34.33 x $350.00 in 2007) and (64.75 x $350.00)

in 2008 totaling $34,678.00.

**B.    Redundant Bills**

    Plaintiffs further contend that Defendants' bills were

redundant and therefore excessive.  As an illustration,

Plaintiffs cite to entries on the invoices dated February 13,

2007, February 15, 2007, February 26, 2007, March 8, 2007, March

12, 2007, April 9, 2007, and April 10, 2007.  The Court has

reviewed these entries as well as other entries for redundancy,

and it does not find that the work performed by the attorneys was

redundant or excessive.  Some of the entries involve conferences

that the lawyers had with each other.  These types of conferences

are expected to occur when there are several lawyers working

together on a complex case.  Moreover, the entries themselves

demonstrate that the lawyers performed separate and distinct

tasks post-conferences.

## C.    Hourly Rates

Plaintiffs also question the reasonableness of the hourly

rate.  The Court's approach in assessing the reasonableness of a

claim for attorney's fees is governed by the "'lodestar' formula,

which requires multiplying the number of hours reasonably

expended by a reasonable hourly rate."  Maldonado v. Houstoun,

256 F.3d 181, 184 (3d Cir. 2001) (citing Hensley v. Echerhart,

461 U.S. 424 (1983)).  The party seeking the fees bears the

burden of proving the reasonableness of the claimed hourly rate.

Interfaith Community Organization v. Honeywell Intern, Inc., 426

F.3d 694, 703 n.5 (3d Cir. 2005).  The party must show that

lawyers of comparable ability commanded the rates the party is

seeking.

To support their requested hourly rates, Defendants have submitted the Certification of Brian Ansell, a Senior Manager-Credit Control in the accounting department of Defendants' counsel's firm (the "Ansell Certification").  According to the Ansell Certification, the firm analyzes and compares its billing rates with the billing rates charged by firms of similar size for attorneys of equivalent experience and expertise in comparable geographic markets.  Based upon his analyses for 2007 and 2008, Ansell arrived at the requested billing rates for attorneys Innamorato, Segota and Offer.[3]  Further, according to the Ansell Certification, he relied upon the Thompson Peer Monitor, an online gathering tool, to compare the requested billing rates with rates charged by peer firms.  The comparisons presented to the Court confirm that the Defendants' counsel's rates were close to the median of rates charged by comparable attorneys in the litigation area.  Thus, the Court finds that the Defendants have sustained their burden of proving the reasonableness of the requested rates by their counsel.  Accordingly, the Court will award **$218,765.60** in attorney fees.

D.   **Excessive Expenses**

Finally, Plaintiffs argue that the amounts Defendants seek

---

[3]   The Ansell Certification is persuasive also as to the reasonableness of the rate charged by attorney Hurd.

for costs and expert fees are excessive.  First, Plaintiffs argue
that Defendants' request for duplicating printing/scanning costs
are "outrageous and excessive."  Plaintiffs' Br. at 13.  The
Court disagrees.  Defendants assessed costs at a reasonable rate
of $.15 per page.  This complex case involved an inordinate
amount of exhibits, requiring extensive photocopying.  The
documentation Defendants have provided is sufficient.

Plaintiffs next contend that Defendants failed to establish
the reasonableness of their experts' fees.  The Court disagrees.
Defendants incurred $89,292.39 in costs for the services of its
economic expert from February 20, 2007, until December 24, 2007.
The expert focused upon the preparation of an economic analysis
and report, which included specific sections addressing the
Participation Agreement claim and its potential impact on their
overall damages in this case.  Given the experts' analyses, the
Defendants appropriately allocated one-third of the fees to the
Participation Agreement claim.  As for the amount of the fees,
the Certification of Fred Harley, Controller for National
Economic Research Associates, Inc. ("NERA") demonstrates that the
experts' hourly billing rates are reasonable.   Indeed,
Plaintiffs' own expert witness, Karen Mallet, FSA, charged $325-
330 per hour while the average rate for Defendants' experts was
$313.  Accordingly, the Court finds Defendants' request for
$29,466.49 to be reasonable.

Finally, Plaintiffs contend that they should not have to pay for lodging, meals or taxi expenses.  The Court agrees.  There is no explanation by Defendants as to what necessitated these expenses; thus, it is not apparent why Plaintiffs should be required to pay these as necessary expenses.  Accordingly, the requested costs for lodging ($11,778.81), meals ($1,029.79) and taxi expenses ($109.20) will not be awarded.  Total costs in the amount of **$44,974.95** will be awarded.

## Conclusion

Accordingly, for the foregoing reasons, Defendants shall be awarded **$263,740.55** in fees and costs.  An accompanying Order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: August 14, 2009